**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

ORLANDO G. HARE,                  :
                                  :   Civil Action No. 04-3283 (JBS)
            Petitioner,           :
                                  :
      v.                          :          **O P I N I O N**
                                  :
JOHN D'AMICO, JR., et al.,        :
                                  :
            Respondents.          :

**APPEARANCES:**

Orlando G. Hare, <u>Pro Se</u>          Lisa A. Puglisi, Esq.
Southwoods State Prison           Office Of The NJ Attorney General
#245926                           R.J. Hughes Justice Complex
215 Burlington Road South         25 Market Street
Bridgeton, NJ 08302               P.O. Box 112
                                  Trenton, NJ 08625

**SIMANDLE**, District Judge

Petitioner Orlando G. Hare, a prisoner currently confined at Southwoods State Prison, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are John D'Amico, Jr., the Chairman of the New Jersey State Parole Board ("Parole Board"), Attorney General of New Jersey Peter Harvey, and Southwoods State Prison Administrator Kathryn MacFarland.

For the reasons stated herein, the Petition must be denied.[1]

---

[1] Respondents' request that the Court dismiss John D'Amico, Jr. and Peter C. Harvey as respondents in this matter will be granted, as these respondents are not the custodian of Petitioner. <u>See</u> 28 U.S.C. § 2242; <u>Yi v. Maugans</u>, 24 F.3d 500 (3d Cir. 1994).

### BACKGROUND

In 1990, Petitioner fatally assaulted his girlfriend's two-year-old daughter.  In 1992, he was convicted of aggravated manslaughter and sentenced to thirty years imprisonment.  In April of 2001, Petitioner was granted parole.  Less than nine months later, he violated parole by testing positive for drug use.

On March 4, 2002, Petitioner's parole was revoked and he was required to serve a 12-month Future Eligibility Term ("FET").  On May 22, 2002, at his next eligibility hearing, Petitioner was denied parole and the Parole Board imposed a 24-month FET.

Petitioner appealed the Parole Board's decision to deny his parole and to impose a 24-month FET to the Superior Court of New Jersey, Appellate Division ("Appellate Division").  The Appellate Division, in a published opinion, affirmed the denial of parole and the imposition of the FET.  See Hare v. New Jersey State Parole Bd., 368 N.J. Super. 175 (App. Div.), certif. denied, 180 N.J. 452 (2004).

On July 9, 2004, Petitioner submitted the instant petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  On August 30, 2004, Petitioner was advised of his rights under Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  On September 14, 2004, Petitioner filed an Amended Petition, naming the warden of the facility where he is incarcerated as a respondent.  On November

8, 2004, Respondents filed an Answer and Response to the Petition, along with a confidential appendix including psychological reports and documentation regarding Petitioner.  On March 28, 2005, Petitioner filed a Motion to require the submission of an audio tape of his parole hearing.  Respondents filed a response to the motion on April 18, 2005, and Petitioner replied to the response on May 2, 2005.

## DISCUSSION

### A. Standard of Review

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

4

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

In a § 2254 proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

**B.   Petitioner's Claims**

Petitioner asserts nine claims for habeas relief.

Petitioner argues:

1. The Parole Board tampered with a hearing tape, which violated Petitioner's due process rights and constitutes a felony.

2. A second FET term of 24 months violates Board Code and sets an FET in excess of the law, and violates Petitioner's Eighth and Fourteenth Amendment rights.

3. The May 31, 200[2] Parole hearing in itself, and reasons for its denial were illegal and violated Petitioner's Fourteenth Amendment rights.

4. Appellate Court was arbitrary and biased in disallowing a handwritten brief, violating Petitioner's due process rights.

5. Appellate Court violated Petitioner's due process rights by not giving an opinion and not adjudicating Petitioner's case on the merits.

6. Parole Board maliciously did not hear Petitioner's administrative appeal within the time allowed by the Parole code, violating Petitioner's Fourteenth Amendment rights.

7. Respondents violated Petitioner's due process rights with distorted and biased portions of psychological reports that played no part in decision.

8. Appellate Court violated Petitioner's due process rights and First Amendment rights with their egregious decision to suppress a transcript/audio tape.

9. Denial of a tape that would have clearly proven Petitioner's claim violates his right to have compulsory process for obtaining witness.

It appears that Petitioner has raised the instant claims before the New Jersey state courts. Therefore, the claims are properly before this Court for a decision on the merits. See 28 U.S.C. § 2254(b)(1). To the extent that any of the claims are not exhausted, this Court exercises its discretion to decide them on the merits, in accordance with 28 U.S.C. § 2254(b)(2).

**C.   Analysis**

As a preliminary matter, it must be remembered that there is no federal constitutional right to parole; states, however, may create a parole entitlement protected by the Due Process Clause.

6

See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979).  See also Board of Pardons v. Allen, 482 U.S. 369 (1987); Prevard v. Fauver, 47 F. Supp.2d 539, 545 (D.N.J.), aff'd, 202 F.3d 254 (3d Cir. 1999).

Both federal and state courts have held that the New Jersey parole statute contains language creating an expectation of parole eligibility entitled to some measure of due process protections.  See Williams v. New Jersey State Parole Board, 1992 WL 32329, *2 (D.N.J. Feb. 4, 1992), aff'd, 975 F.2d 1553 (3d Cir. 1992); New Jersey State Parole Board v. Byrne, 93 N.J. 192, 203 (1983).  Judge Lifland of this Court has held that these cases remain good law even after taking into account the rule announced by the Supreme Court in Sandin v. Conner, 515 U.S. 472, 484 (1995) (citations omitted), that liberty interests created by state law "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  See Watson v. DiSabato, 933 F. Supp. 390, 392-93 (D.N.J. 1996).

The question remains what process is due.  The Supreme Court of New Jersey has stated that

> Only a few basic procedures are required to deal with the risks of erroneous or arbitrary determinations in

7

>   this context.  We conclude that the process required is
>   notice of the pendency of the parole disposition, a
>   statement by the objecting judge or prosecutor of the
>   reasons why the punitive aspects of the sentence have
>   not been fulfilled, and the opportunity for the
>   prisoner to respond in writing to that statement of
>   reasons.  No hearing, confrontation, or counsel issues
>   are implicated here.

Byrne, 93 N.J. at 211.  See also Watson, 933 F. Supp. 390 (prisoner has liberty interest in parole decisions, including notice of determination, statement by the government, and opportunity for prisoner to submit written response).

1.  **Challenges to Denial of Parole** (Ground 3).

Petitioner contends that the May 2002 parole hearing was illegal and violated his due process rights.[2]

As of the time of Petitioner's hearing, the New Jersey Administrative Code, Section 10A:71-3.11(b),[3] listed 22 separate

---

[2] The parole eligibility standard of the Parole Act of 1979 applies to those who were serving a sentence at the time the 1979 Act took effect.  See N.J.S.A. 30:4-123.46a; Trantino v. New Jersey State Parole Bd., 154 N.J. 19, 27 (1998).  The standard was revised again in 1997; the 1997 amendment does not apply to inmates sentenced before its effective date.  See Trantino v. New Jersey State Parole Bd., 331 N.J. Super. 577, 605 (App. Div. 2000), aff'd in part, modified in part, 166 N.J. 113 (2001).

[3] In pertinent part, N.J.S.A. 30:4-123.53(a) provides that, "An adult inmate shall be released on parole at the time of parole eligibility, unless information supplied in the report ... or developed or produced at a hearing ... indicates by a preponderance of the evidence that the inmate has failed to cooperate in his or her own rehabilitation or that there is a reasonable expectation that the inmate will violate conditions of parole ... if released on parole at that time."  The rule set forth in N.J.A.C. 10A:71-3.11, listing the factors to be considered in making parole decisions, was adopted to implement this statutory standard.  See In re Trantino Parole Application, 89 N.J. 347, 366 (1982).

8

factors to be considered by the Parole Board in determining parole eligibility.  Section 10A:71-3.11(b) also permits consideration of "any other factors deemed relevant."  Petitioner does not identify what factors he believes the Parole Board improperly considered.

Section 10A:71-3.11(b) specifically requires consideration of such factors as the commission of a crime while incarcerated; the commission of serious disciplinary infractions; the nature and pattern of previous convictions; adjustment to previous probation, parole and incarceration; the facts and circumstances of the offense, including aggravating factors surrounding the offense; a pattern of less serious disciplinary infractions; participation in institutional programs which could have led to the improvement of problems diagnosed at admission or during incarceration; mental and emotional health; and statements by the inmate reflecting on the likelihood that he or she will commit another crime.

The Appellate Division found that the Parole Board had applied the correct standard in evaluating Petitioner's eligibility for parole and that the factual record justified the Parole Board's conclusion that Petitioner had not reached his rehabilitative potential.  See Hare v. New Jersey State Parole Bd., 368 N.J. Super. 175, 179-80 (App. Div.), certif. denied, 180 N.J. 452 (2004)(finding Petitioner's criminal record, his incarceration for multi-crime convictions, his parole violation,

the failure of prior incarceration to deter criminal behavior, and the insufficient insight into and resolution of his substance abuse problem were sufficient to deny parole).

Petitioner has failed to present evidence to rebut the factual determinations of the Appellate Division or to suggest that the Parole Board or Appellate Division applied an incorrect standard in determining his eligibility for parole.  Petitioner has failed to establish any due process violation in the denial of his parole.  Petitioner is not entitled to relief on this ground.

2.   **Challenges to Future Eligibility Term** (Ground Two).

Petitioner argues that the imposition of a twenty-four month Future Eligibility Term ("FET") violates state law,[4] and violates his Eighth and Fourteenth Amendment rights.

Pursuant to the Parole Act of 1979, the Parole Board may establish a Future Eligibility Term outside the guidelines if the guidelines term "is clearly inappropriate in consideration of the circumstances of the crime, the characteristics and prior criminal record of the inmate and the inmate's institutional behavior."  Williams v. New Jersey State Parole Bd., 1992 WL 32329, *5 (D.N.J. Feb. 4, 1992) (citing N.J.S.A. 30:4- 123.56(b); N.J.A.C. 10A:71-3.21(d)).  However, in this case, the Parole

---

[4] A violation of state law is not a ground for relief in federal habeas corpus, see 28 U.S.C. § 2254(a), unless such violation also amounts to a violation of the Constitution or laws or treaties of the United States.

10

Board issued an FET of twenty-four months, three months less than the presumptive term in the statutory guidelines.  See N.J.A.C. 10A:71-3.21 (stating that an inmate serving a sentence for manslaughter shall serve twenty-seven additional months after being denied parole); N.J.A.C. 10A:71-3.21(c)(subjecting presumptive term to nine-month increase or decrease).

The Appellate Division affirmed the imposition of the FET, noting that the Parole Board had applied the correct standard, and that the FET was "appropriately determined."  Citing N.J.A.C. 10A:71-3.11(b), the Appellate Division noted that the Parole Board "considered those reasons sufficient to deny parole and establish the twenty-four-month FET."  Hare, 368 N.J. Super. at 180 (including Petitioner's criminal record, his incarceration for multi-crime convictions, his parole violation, the failure of prior incarceration to deter criminal behavior, and the insufficient insight into and resolution of his substance abuse problem).

This Court is in agreement with the Appellate Division that the decision of the Parole Board comports with state law and is supported by the record.  Certainly, this Court can discern no due process or other constitutional violation.  Accordingly, Petitioner is not entitled to relief on this ground.

**3.   Challenges to Appellate Court Procedure** (Grounds 4 and 5).

Petitioner contends that his due process rights were violated because the Appellate Division would not let him submit

11

a handwritten brief, and did not issue an opinion concerning what he believes were the relevant facts to be considered on appeal.

These claims have no merit. The Court notes that Petitioner was not denied access to the courts for failure to provide a typewritten brief, and that his appeal was fully adjudicated on the merits. The Court further notes that the Appellate Division issued a written, published opinion in response to his appeal. The Court finds no constitutional violation in any of the state procedures utilized by the Appellate Division.

**4.** **Challenge to Timeliness of Administrative Appeal** (Ground 6).

Petitioner argues that his due process rights were violated because the Parole Board failed to respond to his administrative appeal within the time allotted by the Administrative Code. Indeed, N.J.A.C. 10A:71-4.3(e) provides that if the Board's decision is not received within 45 days of the date the appeal was received, the failure to respond shall be deemed a denial of the appeal.

Respondents concede that the denial of the appeal was issued beyond the 45-day time limit. However, Petitioner could have deemed the administrative appeal denied. Regardless, the Appellate Division proceeded with Petitioner's appeal *nunc pro tunc*, and there was no harm to Petitioner.

Petitioner fails to establish that the late agency decision violated his due process rights, or otherwise warrants him relief

under 28 U.S.C. § 2254.  Thus, Petitioner is not entitled to habeas relief on this ground.

5.      **Challenges to Use of Psychological Reports** (Ground 7).

Petitioner argues that the "Court condoned the arbitrarily picking of portions [of the psychological reports] to show me in the negative" even though those reports were not noted as having played a part in the final agency decision.  Respondents point out that under the New Jersey Administrative Code, inmates are not given access to their psychological evaluations for safety reasons.  See N.J.A.C. 10A:22-2.3.

In this case, the Parole Board submitted to the Appellate Division (and to this Court in this action) a 182-page confidential appendix including psychological evaluations of Petitioner.  Respondents state that the submission was complete, that is, while the Parole Board may have cited certain sections of the evaluations in its brief to the Appellate Division, the Appellate Division had the entire record for its review when it reviewed Petitioner's case.

Petitioner has failed to show how his constitutional rights have been violated.  Nor has Petitioner demonstrated that he is entitled to relief on this claim pursuant to 28 U.S.C. § 2254.

6.      **Claims as to Audio Tape/Transcript** (Grounds 1, 8, and 9).

Petitioner argues that the Parole Board tampered with his hearing tape, resulting in the transcript containing over 100 "indiscernible" notations.  (Ground 1).  He also contends that

13

the Appellate Division's decision to proceed without a transcript of the audio tape of his hearing violated his constitutional rights.  (Ground 8).  Finally, Petitioner argues that the tape would have proven his claims that the Parole Board was hostile, biased, and unprofessional.  (Ground 9).

Petitioner also filed a motion in this case to require submission of the audio tape.  Respondents answered the motion, stating that the Appellate Division had had the transcript of the audio tape when it rendered its decision regarding Petitioner.  Respondents note that the accuracy of the transcript was certified by a private transcription company.  (See Motion, Response and Reply, docket numbers 10, 11, 12).

The Appellate Division noted that the Parole Board reviewed the hearing tape in relation to Petitioner's claim that a Board member had been biased.  See Hare, 368 N.J. Super. at 180.  The Appellate Division noted that the Board found that the tape did not reveal any showing of bias or prejudice, stating "[t]here was no evidence of hostility heard on the tape."  Id.

This Court's task in deciding whether or not Petitioner is entitled to relief under 28 U.S.C. § 2254 is limited to reviewing whether the state court adjudication of claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Federal courts, on habeas review, "are not to 'second-guess parole boards,' and the requirements of substantive due process are met if there is some basis for the challenged decision." Hunterson v. DiSabato, 308 F.3d 236, 246 (3d Cir. 2002)(citing Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir. 2001)).

In this case, Petitioner has not demonstrated that his denial of parole involved an unreasonable application of Federal law or was based on an unreasonable determination of facts in light of evidence presented. The evidence presented to the Parole Board and the Appellate Division, including the transcript of the audio tape, all of which this Court has reviewed, supports the Board and the Appellate Division's finding that there was a substantial risk that Petitioner would commit another crime if released. The audio tape was certified as being accurate by a private company. This Court finds no reason to disturb the decision of the Appellate Division, and finds no violation of Petitioner's constitutional rights.

## CONCLUSION

For the reasons set forth above, the Petition must be denied.

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). Petitioner has failed to make a substantial showing of the denial of a constitutional right. No certificate of appealability shall issue.

    An appropriate order follows.

                                          **s/ Jerome B. Simandle**
                                              JEROME B. SIMANDLE
                                    United States District Judge

Dated: **September 30, 2005**